IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CLARK BARTHOLOMEW; TANYA BARTHOLOMEW; and ARIC BARTHOLOMEW, a minor, by his next friend CLARK BARTHOLOMEW,<br><br>          Plaintiffs,<br><br>    vs.<br><br>BURGER KING CORPORATION; CTI FOODS HOLDING CO., LLC.; UNITED STATES ARMY AND AIR FORCE EXCHANGE SERVICE; DOES 1-150,<br><br>          Defendants. | CIVIL NO. 11-00613 JMS/RLP<br><br>ORDER DENYING DEFENDANT BURGER KING CORPORATION'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 189 |

**ORDER DENYING DEFENDANT BURGER KING CORPORATION'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 189**

**I. INTRODUCTION**

This is a tort action arising from an incident in which Plaintiff Clark Bartholomew ("Bartholomew") allegedly sustained injuries from eating a Triple Whopper sandwich imbedded with two needle-shaped metal objects at a Burger King Restaurant franchised to Defendant Army and Air Force Exchange Service ("AAFES").

On October 12, 2011, Bartholomew, his wife, and his son ("Plaintiffs") filed this action alleging tortious conduct by Defendants Burger King Corporation ("Burger King"), AAFES, and CTI Foods Holding Company ("CTI"), the hamburger patty supplier.

Currently before the court is Burger King's February 3, 2014 Motion for Summary Judgment arguing that Burger King cannot be liable for Bartholomew's injuries as a mere franchisor with insufficient control over the AAFES restaurant. Based on the following, the Court DENIES the Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

In considering Burger King's Motion for Summary Judgment, the court views the evidence in the light most favorable to Plaintiffs, the non-moving party. *See, e.g.*, *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1270 (9th Cir. 2011). On December 1, 2010, Bartholomew's wife ordered a Triple Whopper meal at the AAFES restaurant and took it home for Bartholomew. Doc. No. 164, Am. Compl. at 6. While eating the sandwich, Bartholomew bit into a needle-like object, which pierced his tongue. *Id*. Two days later, Bartholomew experienced stomach pain and sought medical attention. *Id*. at 7. Apparently, another needle-like object was

lodged in his small intestine requiring hospitalization. *Id*. He was placed on bed rest until December 9, 2010. *Id*.

On May 15, 2009, Burger King and AAFES entered into a Franchise Agreement and Development Agreement ("Franchise Agreement"). Doc. No. 189-1, Burger King Concise Statement of Facts ("CSF") at 2.[1] Under the Franchise Agreement, AAFES is a franchisee of a Burger King Restaurant located at Schofield Barracks, Hawaii, but AAFES "is not an agent, partner, joint venture or employee of [Burger King]." *Id*. According to the Franchise Agreement, Burger King has "no control over the terms and conditions of employment of AAFES' employees," and AAFES "must indicate the Independent ownership of the Restaurant and . . . that the Restaurant is operated by an Independent operator." *Id*. at 4. At all relevant times, Burger King had no employees or management personnel at the AAFES restaurant. *Id*. The Franchise Agreement also provides that AAFES must "comply strictly at all times with all elements of the Burger King System" and it reserves an "unrestricted right to enter the Restaurant" for inspection to the franchisor. Doc. No. 205-3, Pls.' CSF at Ex. 2D-E. Thus, the Franchise Agreement disclaims any agency relationship between Burger King and AAFES but requires AAFES to strictly adhere to the Burger King brand standards.

---

[1] Where a fact is not in dispute, the court cites directly to Plaintiff's or Defendant's CSF.

The Franchise Agreement incorporates the Burger King Mod Manual, an extensive manual that details food assembly procedures, crisis management procedures (including food tampering and food-related injuries), and quality assurance standards. *Id.* at Ex. 1.A.42., 1.A.35, and 1.A.39. The manual describes a precise method by which employees are to assemble the Triple Whopper Sandwich from spreading "3/4 [ounces] of mayonnaise evenly from edge to edge" of the bun crown to placing "three meat patties on the bun heel." *Id*. at 1.A.3-4. The manual also has extensive "required" instructions for storage and broiling of beef patties. *Id*. at 1.A.6-16. Finally, the manual mandates that "[o]nly products, supplies, and equipment on the Approved Brands List (ABL) or Approved Equipment List (AEL) are authorized for use in your restaurant." *Id.* at 1.A.39.

**B.     Procedural Background**

On October 12, 2011, Plaintiffs filed this action alleging that Burger King and CTI acted negligently in exercising their duty of care to Bartholomew, his wife, and his son. Doc. No. 1, Compl. In addition to this breach of the duty of care, Plaintiffs allege the following causes of action: negligent infliction of emotional distress; negligent training, retention, supervision, and/or hiring; statutory tort under Hawaii Revised Statutes ("HRS") § 663-1; strict products liability; breach of implied warranty; and failure to warn. *Id*. On February 19,

4

2013, Burger King filed a Third Party Complaint against AAFES, Doc. No. 147, after which AAFES filed a crossclaim against CTI and a counterclaim against Burger King on August 9, 2013. Doc. No. 153. On September 7, 2013, Plaintiffs filed their First Amended Complaint adding a tenth cause of action specifically against Burger King for unfair or deceptive practices under HRS Chapter 480. Doc. No. 164.

On February 3, 2014, Burger King filed the instant Motion, Doc. No. 189.[2] On March 3, 2014, Plaintiffs filed their Opposition to the Motion, Doc. No. 204, and on March 10, 2014, Burger King filed its Reply. Doc. No. 206. Both AAFES and CTI filed Statements of No Position on the Motion on March 14, 2014 and March 26, 2014, respectively, Doc. Nos. 209 and 211. The court determines the Motion without a hearing under Local Rule 7.2(d).

### III. STANDARD OF REVIEW

**A. Motion for Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who

---

[2] On December 4, 2013, CTI filed a Motion for Summary Judgment, Doc. No. 180, which was denied on February 24, 2014, Doc. No. 202. On March 10, 2014, AAFES filed a Motion to Dismiss, Doc. No. 207, and the hearing is set on that Motion for May 5, 2014.

5

fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation, internal quotation signals, and emphasis omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

**B.     Review of State Law Claims**

This case involves questions of both state and federal law. "When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). "In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case. . . . In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) (citations omitted).

# IV. **DISCUSSION**

Burger King's Motion seeks summary judgment as to all claims, and ultimately turns on whether it, as a mere franchisor, may be held liable for injuries arising from the consumption of a sandwich produced by a franchisee. Because the cause of the alleged negligence remains in dispute, this court cannot conclude, at this summary judgment stage, that Burger King has no possible liability.

## A.     General Principles of Franchisor Liability

Hawaii has very little case law specifically addressing franchisor tort liability. *Ottensmeyer v. Baskin*, 2 Haw. App. 86, 625 P.2d 1069 (1981), however, recognized that liability for a franchisor could arise from the actual or apparent agency of the franchisee. *Id.* at 88, 625 P.2d at 1071; *cf. Son-Gi Han v. Kang*, 2009 WL 4268383, at *6 (Haw. App. Nov. 25, 2009) (mem.) ("Although a franchise agreement expressly disclaims agency on part of franchisee, the court must consider the franchise agreement and the amount of control exercised over the franchisee.") (citing *Ottensmeyer*). *Ottensmeyer*, thus, makes clear that Hawaii recognizes tort liability for franchisors although it does not describe exact parameters for such liability.

Many cases from other jurisdictions, however, describe the well-accepted general principles of franchisor liability -- franchisors may be liable

where they control or have the right to control day-to-day operations of the franchisee sufficient to establish an agency relationship. *See Dubois v. Kepchar*, 889 F. Supp. 1095, 1102-03 (N.D. Ind. 1995) (affirming grant of summary judgment to Century 21 franchisor noting that the franchisee ran his operation with "a free hand"); *Bahadirli v. Domino's Pizza*, 873 F. Supp. 1528, 1537 (M.D. Ala. 1995) (granting summary judgment in Title VII action in favor of franchisor because there was no evidence that franchisor had the right to control day-to-day activities of employees); *Hayman v. Ramada Inn, Inc.*, 357 S.E.2d 394, 397 (N.C. Ct. App. 1987) (affirming summary judgment in favor of franchisor motel where franchise agreement gave no standards for security of the premises); *Miller v. McDonald's Corp.*, 945 P.2d 1107, 1111 (Or. Ct. App. 1997) (reversing summary judgment finding that there were factual issues as to whether franchise agreement demonstrated control sufficient to establish an agency relationship).

In addition to this actual agency based liability, courts may find the franchisor liable where the franchisor has control of or the right to control the specific instrumentality of the harm. *Ketterling v. Burger King Corp.*, 272 P.3d 527, 533 (Idaho 2012) ("'A franchisor may be held vicariously liable for the tortious conduct of its franchisee only if the franchisor has control or a right of control over the daily operation of the specific aspect of the franchisee's business

that is alleged to have caused the harm.'") (citing 62B Am. Jur. 2d *Private Franchise Contracts* § 298 (2011)); *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 87 (E.D.N.Y. 2000) ("In deciding whether a franchisor may be held vicariously liable for acts of its franchisees, courts determine . . . whether the franchisor exercises a considerable degree of control over the instrumentality at issue in a given case."). In fact, "there is an emerging judicial consensus to apply a franchisor liability test that considers the franchisor's control or right of control over the instrumentality that is alleged to have caused the harm." *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 54 (Ky. 2008).

And this rule makes sense -- an instrumentality-focused franchisor liability test allows courts to assess liability against those who were in the best position to prevent the harm. For example, a franchisor who exerts considerable control over the temperatures of food products may be held liable for injuries resulting from temperatures that were too high or too low. In contrast, that same franchisor would not be liable for a slip and fall where the franchisee had exclusive control over upkeep of the premises. Given the "emerging judicial consensus" and the soundness of this approach to franchisor liability, the court concludes that Hawaii would also embrace a test that focuses on the nexus between the franchisor's control and the instrumentality of the harm. *See Takahashi*, 625 F.2d

at 316 (relying on precedent from other jurisdictions to predict how the Hawaii Supreme Court would interpret law related to worker's compensation claims involving third-party torts).

In addition to liability under the control test, a franchisor may also be liable for the tortious acts of the franchisee if an apparent agency relationship exists. Under the doctrine of apparent agency, vicarious liability arises where a franchisor represents to consumers that a franchisee is the agent of the franchisor causing a consumer to justifiably rely upon the apparent agency. *See* Restatement (Second) of Agency § 267 (1958); *Cho Mark Oriental Food, Ltd. v. K&K Int'l*, 73 Haw. 509, 516, 836 P.2d 1057, 1062 (1992).

**B.     Application of Principles of Franchisor Liability**

   *1.     Negligence Liability-Based Counts: Negligence; Negligent Infliction of Emotional Distress; Negligent Training, Retention, Supervision, and/or Hiring; and Statutory Tort Liability (HRS § 663-1)*

Burger King first argues that it cannot be liable for the counts of negligence because it had no control over the AAFES restaurant. Doc. No. 189, Mot. at 4. In this regard, *Miller* is especially instructive -- the facts are directly on point. In *Miller*, a fast-food patron was injured when she bit into a sapphire imbedded in her Big Mac, the signature sandwich of the fast-food franchisor. 945 P.2d at 1108. *Miller* reversed summary judgment in favor of the franchisor

because there were sufficient facts for a jury to find that the franchisor had "the right to control the way in which [the franchisee] performed at least food handling and preparation." *Id*. at 1111. The court held that if a franchisor details specific procedures that employees must follow with respect to "food handling and preparation," there may be sufficient control on the part of the franchisor to establish respondeat superior liability for injuries resulting from that food. *Id*.

Plaintiffs contend that Burger King maintains a "tight grip on the daily worldwide, burger-by-burger operations" and has strict specifications regarding preparation of the Triple Whopper as well as ingredient supply. Doc. No. 204, Pls.' Opp'n at 3. In support of these contentions, Plaintiffs point to various provisions in the franchise agreement including detailed Whopper assembly instructions and a requirement that "only products, supplies and equipment on the Approved Brands List . . . are authorized for use in your restaurant." Doc. No. 205-2, Pls.' CSF, Ex. 1 at 1.A. 3-4 and 1.A.39. These provisions create a genuine issue of fact -- one that severely undermines Burger King's assertion that "the Restaurant was under the exclusive control of AAFES." Doc. No. 189, Mot. at 4.

Burger King points out that the franchise agreement states that "the franchisee is responsible for the day-to-day operation of his/her business," Doc.

No. 206, Reply at 2, and that AAFES "is not an agent, partner, joint venture or employee of [Burger King]." Doc. No. 189, Burger King CSF at 3. But a disclaimer of agency in a franchise agreement will not, by itself, defeat liability where the circumstances indicate that the requisite control exists. *Ottensmeyer*, 2 Haw. App. at 88, 625 P.2d at 1071. There is clearly an issue of material fact as to whether Burger King retained the requisite control over the Triple Whopper consumed by Bartholomew.[3]

### 2. *Products Liability-Based Counts: Strict Products Liability, Failure to Warn, and Breach of Implied Warranty*

Burger King also challenges the claims of strict products liability, failure to warn, and breach of implied warranty of merchantability. Doc. Nos. 189, Mot. at 3-4 and 204, Pls.' Opp'n at 12-13. But, like vicarious franchisor liability,

---

[3] Burger King in its Reply cites a series of cases that held franchisors not liable for torts at their franchised operations. Doc. No. 206, Reply at 4-5. All of those cases, however, focus on the lack of control by the franchisor on the specific instrumentality of the harm, *i.e.*, security measures, leaky plumbing, and a murderous employee. *Hoffnagle v. McDonald's Corp.*, 522 N.W.2d 808, 814 (Iowa 1994) (affirming summary judgment in favor of franchisor for liability to employee for assault and attempted kidnaping by restaurant customers); *Hayman v. Ramada Inn, Inc.*, 357 S.E.2d 394, 397 (N.C. Ct. App. 1987) (affirming summary judgment in favor of franchisor for liability to hotel customer for assault and noting that the franchise agreement did not establish standards for operation); *Barnes v. Wendy's Int'l, Inc.*, 857 S.W.2d 728, 730 (Tex. Ct. App. 1993) (affirming summary judgment in favor of franchisor for liability to employee resulting from slip and fall injuries caused by leaky plumbing); *Coty v. U.S. Slicing Machine Co.*, 373 N.E.2d 1371, 1376 (Ill. 1978) (affirming a directed verdict in favor of franchisor for liability to underage employee injured using a defective meat slicer); *Folsom v. Burger King*, 958 P.2d 301, 311-12 (Wash. 1998) (affirming summary judgment in favor of franchisor for liability to victims of murder by franchisee employee).

Burger King's degree of control is also an essential element to these other theories of liability. *See Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 74-75, 470 P.2d 240, 243 (1970) (adopting the tort of strict products liability in Hawaii); *Kasel v. Remington Arms Co.*, 101 Cal. Rptr. 314, 323 (Cal. Ct. App. 1972) (extending strict products liability "upward" to franchisor with substantial financial interests in franchisee and rights of quality control); *Hofherr v. Dart Indus., Inc.*, 853 F.2d 259, 262-63 (4th Cir. 1988) (affirming lower court's holding that franchisor has no duty to warn where it does not exercise control over franchisee's day-to-day operations), *Kosters v. Seven-Up Co.*, 595 F.2d 347, 352-53 (6th Cir. 1979) (holding that franchisor may be liable under a theory of implied warranty of merchantability where franchisor exercises control over distribution even though it did not design or supply the product that caused the injury). Because there are genuine issues of material facts with respect to Burger King's degree of control over the Triple Whopper and the AAFES restaurant, summary judgment is inappropriate on the claims of strict products liability, duty to warn, and implied warranty of merchantability.

   3.   *Liability Based on Apparent Agency*

Questions of fact also preclude summary judgment on an apparent agency theory. As stated, vicarious liability arises where a franchisor represents to

14

consumers that a franchisee is the agent of the franchisor causing a consumer to justifiably rely upon the apparent agency. *See* Restatement (Second) of Agency § 267 (1958); *Cho Mark Oriental Food, Ltd. v. K&K Int'l*, 73 Haw. 509, 516, 836 P.2d 1057, 1062 (1992). Thus, if AAFES was the apparent agent of Burger King, Burger King is liable for the torts of AAFES.

The fast-food franchise model relies upon a public perception of a "national system of restaurants with common products and common standards of quality." *Miller*, 945 P.2d at 1113. In this case, although the franchise agreement required AAFES to post a sign notifying the public of its ownership and operation of the establishment, it is unclear whether AAFES actually posted such a sign. Doc. 189, Mot. at 7. Further, a single sign indicating that a franchisee owns the particular restaurant at issue may not necessarily overcome the public perception of agency. *Id*.

*Ottensmeyer* examined the franchise relationship and apparent agency. 2 Haw. App. at 88, 625 P.2d at 1071. The court reversed summary judgment in favor of the franchisor, Miss Universe, Inc., and the franchisee, holding that there were jury issues as to whether "the manifestations of control apparent to the [pageant] contestants" were "sufficient indications of actual or apparent authority on the part of [the franchisee]." *Id*. Although the franchisor/franchisee agreement

had a provision "expressly disclaim[ing] any agency on the part of the franchisee," *Ottensmeyer* emphasized that such contract language was not dispositive. *Id.* Instead, "consideration of the whole record" controls the determination of apparent agency. *Id.*[4]

Similarly, the Burger King/AAFES Franchise Agreement disavows any agency relationship between Burger King and AAFES. However, other "manifestations of control," such as the branding efforts of Burger King and the potential lack of AAFES signage at the AAFES restaurant, might create a relationship of apparent agency, and is, therefore, a genuine issue of material fact. Indeed, there is a "Burger King" sign outside of the AAFES restaurant, the architectural and color scheme of the restaurant matches that of other Burger King restaurants, and numerous materials inside the restaurant bear the "Burger King" logo. Doc. No. 164, Am. Compl. at 14. These factors could lead a fact finder to conclude that the Plaintiffs justifiably relied upon an apparent agency relationship between AAFES and Burger King.

---

[4] *Ottensmeyer* does not make clear what parts of the "whole record" were relevant with respect to the issue of apparent agency. The court referenced "a number of depositions," but did not detail what factual assertions might give rise to apparent agency liability for Miss Universe, Inc. *Ottensmeyer*, 2 Haw. App. at 87, 625 P.2d at 1070.

## D. Liability for Deceptive Practices

Finally, Burger King challenges Plaintiffs' claim that it violated HRS Chapter 480, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." HRS § 480-2(a). "A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.' The representation, omission, or practice is material if it is likely to affect a consumer's choice." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir. 2010) (quoting *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 262, 141 P.3d 427, 435 (2006)).

Plaintiffs allege, in part, that the Franchise Agreement along with the display of the Burger King logo on signs and various materials amounted to an "unethical, oppressive, unscrupulous" scheme that directed "injured customers to a vast bureaucracy with strong immunities from suit -- [AAFES]." Doc. No. 164, Am. Compl. at 14. Plaintiffs' exact HRS § 480-2 theory is ambiguous. But the essential allegation appears to be that Burger King misrepresented its status as a franchisor by displaying its logo and failing to put Plaintiffs on adequate notice that it was not the actual operator of the AAFES restaurant. Burger King's Motion is directed only to this theory and argues that the court should presume that

AAFES posted signs clarifying that it, not Burger King, operated the AAFES restaurant. Doc. No. 189, Mot. at 7.

The court has serious doubts that a standard franchisor/franchisee relationship amounts to a deceptive practice. Nevertheless, there remains a question of fact in terms of Burger King's core argument -- whether there were notices to the public that AAFES was the restaurant operator. In this limited respect, the court denies the Motion as to the claim that Burger King engaged in deceptive practices. To be clear, the parties have not addressed any other aspect of Plaintiffs' HRS § 480-2 claim, and thus the court has not determined that the claim would otherwise present a jury question.

///

///

///

///

///

///

///

///

## V. CONCLUSION

For the reasons discussed above, the court DENIES Defendant Burger King Corporation's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 14, 2014.



        /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Bartholomew v. Burger King Corp., et al.*, Civ. No. 11-00613 JMS/RLP, Order Denying Defendant Burger King Corporation's Motion for Summary Judgment, Doc. No. 189